UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

REGINALD BUSH,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　　　)　　　Case No. 4:16CV250 JCH
　　　　　　　　　　　　　　　　　　)
ST. LOUIS REGIONAL CONVENTION　　　)
AND SPORTS COMPLEX AUTHORITY;　　　)
ST. LOUIS CONVENTION & VISITORS　　)
COMMISSION; and THE ST. LOUIS　　　)
RAMS, LLC,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　)

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Remand, filed March 24, 2016. (ECF No. 21). The motion is fully briefed and ready for disposition.

## **BACKGROUND[1]**

At all times relevant to this action, Plaintiff Reginald Bush was a professional football player employed by the San Francisco 49ers. (First Amended Petition (hereinafter "Complaint" or "Compl."), ¶ 1). On November 1, 2015, Plaintiff played as a running back for the 49ers in a game against the St. Louis Rams that took place at the Edward Jones Dome in St. Louis, MO. (*Id.*, ¶¶ 6, 10). According to Plaintiff, while trying to slow down out-of-bounds after a play had concluded in the first quarter, Plaintiff slipped on a concrete surface surrounding the turf playing field at the Dome. (*Id.*, ¶¶ 7, 11-13). Plaintiff maintains the resultant injury to his left knee ended his football season. (*Id.*, ¶ 13).

---

[1] A portion of the Court's background section is taken from Plaintiff's Complaint, to which the Rams have not yet filed an answer.

In or around January, 2016, Plaintiff filed a petition against the St. Louis Regional Convention and Sports Complex Authority and the St. Louis Convention & Visitors Commission in the Circuit Court for the City of St. Louis, Missouri. (ECF No. 1-4, PP. 1-6). In the instant Complaint, filed January 15, 2016, Plaintiff added the St. Louis Rams, LLC as a Defendant, asserting claims against them for premises liability (Count III) and negligence (Count IV). (ECF No. 7). Plaintiff seeks damages "in the form of lost wages, medical expenses, loss of future earnings, and pain and suffering," together with punitive damages for the Rams' "complete indifference to or conscious disregard" for his safety and that of others. (*Id.*, ¶¶ 43, 44, 48, 49).

The Rams removed the suit to this Court on February 24, 2016. (ECF No. 1). As grounds for the removal, the Rams note that Plaintiff and the Rams are both bound by a collective bargaining agreement ("CBA") governing the terms and conditions of employment of National Football League ("NFL") players. (*Id.*, ¶ 4).[2] As such, the Rams maintain federal question jurisdiction exists in this case because Plaintiff's state-law tort claims are completely preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). (*Id.*, ¶¶ 9, 10). As noted above, Plaintiff filed the instant Motion to Remand on March 24, 2016, asserting his claims should be remanded to Missouri state court because they are not preempted by the LMRA. (ECF No. 21).

**LEGAL STANDARDS**

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." "'The presence of even one federal claim gives the defendant the right to remove the entire case to federal court.'" *Green v. Arizona Cardinals Football Club*

---

2 According to the Rams, the CBA was negotiated between the NFL Players Association ("NFLPA"), the sole and exclusive collective bargaining representative of all NFL players, and the NFL Management Council, the sole and

*LLC*, 21 F.Supp.3d 1020, 1025 (E.D. Mo. 2014) (quoting *Williams v. Ragnone*, 147 F.3d 700, 703 (8th Cir. 1998) (alteration and citation omitted)). Removal statutes are strictly construed, however, and "any doubts about the propriety of removal must be resolved in favor of remand." *Id.* (citing *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993)).[3]

Section 301 of the LMRA applies to "'[s]uits for violation of contracts between an employer and a labor organization,' 29 U.S.C. § 185(a), or, in other words, suits for breaches of CBAs." *Williams v. National Football League*, 582 F.3d 863, 873 (8th Cir. 2009). "Section 301 completely preempts state law claims that are 'substantially dependent upon analysis' of a CBA, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), because 'the application of state law…might lead to inconsistent results since there could be as many state law principles as there are States.'" *Green*, 21 F.Supp.3d at 1025 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Williams*, 582 F.3d at 874). "However, the [Supreme] Court has established that section 301 does not preempt state law claims merely because the parties involved are subject to a CBA and the events underlying the claim occurred on the job." *Williams*, 582 F.3d at 874 (citations omitted).

In applying the section 301 preemption doctrine, the Court begins with the "claim itself," *Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006), and applies a two-step approach in order to determine if the claim is sufficiently "independent" to survive complete preemption. *Williams*, 582 F.3d at 874.

> First, a state law claim is preempted if it is based on a provision of the CBA, meaning that the CBA provision is at issue and it actually sets forth the right upon which the claim is based. Second, § 301 complete preemption applies where a state law claim is dependent upon an analysis of the relevant CBA, meaning that the resolution of plaintiff's state law claim requires interpretation of a provision of the

---

exclusive bargaining representative of all NFL member clubs. (Notice of Removal, ¶ 4).
3 As the party invoking federal jurisdiction, the Rams have the burden of establishing that prerequisites to jurisdiction have been satisfied. *Green*, 21 F.Supp.3d at 1025.

CBA. The Eighth Circuit in *Williams* reiterated that 301 preemption only applies to claims that require interpretation or construction of the CBA as opposed to those which only require reference to it or where the CBA need only be consulted during its adjudication.

*Green*, 21 F.Supp.3d at 1025-26 (internal quotation marks and citations omitted).[4]

## **DISCUSSION**

As noted above, the Court begins its section 301 preemption analysis with the claim itself, negligence.[5] Under Missouri law, a negligence claim requires Plaintiff to prove that the Rams had a duty to protect him from injury, the Rams failed to perform that duty, and the Rams' failure proximately caused injury to Plaintiff. *Green*, 21 F.Supp.3d at 1027 (citing *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002) (citation omitted)). Plaintiff's negligence claims are premised on the common law duty of care that sports teams owe to their invitees. (Plaintiff's Memorandum in Support of Motion to Remand, P. 6). According to Plaintiff, this duty required the Rams "to remove or warn of dangerous conditions in the Dome and to maintain the Dome, including the playing surface and surrounding areas, in a reasonably safe condition." (Compl., ¶ 36).

Keeping in mind the two-step approach to preemption, the Court now must evaluate whether the CBA is the source of Plaintiff's claims, or whether the claims are substantially dependent upon an interpretation of the CBA. *Green*, 21 F.Supp.3d at 1027. The Rams argue that an analysis of the CBA and its incorporated documents is necessary to determine the scope of the above duty. Specifically, the Rams assert the following sections of the CBA require interpretation in order to resolve Plaintiff's claims:

---

4 The Court must be careful to ensure that interpretation of the CBA is required by Plaintiff's claims themselves, and not by a defense injected by Defendant. *See Green*, 21 F.Supp.3d at 1026, 1029.
5 Premises liability is a form of negligence, and so the Court need not separately consider the application of section 301 preemption to Count III. *See Whitlock v. Key Properties I, L.C.*, 2005 WL 1498845, at *5 (W.D. Mo. Jun. 22, 2005).

### Article 39: Players' Rights To Medical Care And Treatment

**Section 1.** **Club Physician:…**

**(c)** **Doctor/Patient Relationship.** The cost of medical services rendered by Club physicians will be the responsibility of the respective Clubs, but each Club physician's primary duty in providing player medical care shall be not to the Club but instead to the player-patient….

**Section 3.** **Accountability and Care Committee:**

**(a)** The parties agree to establish an Accountability and Care Committee, which will provide advice and guidance regarding the provision of preventive, medical, surgical, and rehabilitative care for players by all clubs during the term of this Agreement. The Committee shall consist of the NFL Commissioner and the NFLPA Executive Director (or their designees). In addition, the Commissioner and Executive Director shall each appoint three additional members of the Committee, who shall be knowledgeable and experienced in fields relevant to health care for professional athletes.

**(b)** The Committee shall meet in person or by conference call at least three times per year, or at such other times as the Commissioner and Executive Director may determine.

**(c)** The Committee shall:… (ii) develop a standardized preseason and postseason physical examination and educational protocol to inform players of the primary risks associated with playing professional football and the role of the player and the team medical staff in preventing and treating illness and injury in professional athletes;

### Article 41: Workers' Compensation

**Section 1. Benefits:** In any state where workers' compensation coverage is not compulsory or where a Club is excluded from a state's workers' compensation coverage, a Club will either voluntarily obtain coverage under the compensation laws of that state or otherwise guarantee equivalent benefits to its players. In the event that a player qualifies for benefits under this section, such benefits will be equivalent to those benefits paid under the compensation law of the state in which his Club is located.

### Article 44: Injury Grievance

**Section 1. Definition:** An "Injury Grievance" is a claim or complaint that, at the time a player's NFL Player Contract or Practice Squad Player Contract was terminated by a Club, the player was physically unable to perform the services

### Article 39: Players' Rights To Medical Care And Treatment

**Section 1.** **Club Physician:…**

**(c)** **Doctor/Patient Relationship.** The cost of medical services rendered by Club physicians will be the responsibility of the respective Clubs, but each Club physician's primary duty in providing player medical care shall be not to the Club but instead to the player-patient….

**Section 3.** **Accountability and Care Committee:**

**(a)** The parties agree to establish an Accountability and Care Committee, which will provide advice and guidance regarding the provision of preventive, medical, surgical, and rehabilitative care for players by all clubs during the term of this Agreement. The Committee shall consist of the NFL Commissioner and the NFLPA Executive Director (or their designees). In addition, the Commissioner and Executive Director shall each appoint three additional members of the Committee, who shall be knowledgeable and experienced in fields relevant to health care for professional athletes.

**(b)** The Committee shall meet in person or by conference call at least three times per year, or at such other times as the Commissioner and Executive Director may determine.

**(c)** The Committee shall:… (ii) develop a standardized preseason and postseason physical examination and educational protocol to inform players of the primary risks associated with playing professional football and the role of the player and the team medical staff in preventing and treating illness and injury in professional athletes;

### Article 41: Workers' Compensation

**Section 1. Benefits:** In any state where workers' compensation coverage is not compulsory or where a Club is excluded from a state's workers' compensation coverage, a Club will either voluntarily obtain coverage under the compensation laws of that state or otherwise guarantee equivalent benefits to its players. In the event that a player qualifies for benefits under this section, such benefits will be equivalent to those benefits paid under the compensation law of the state in which his Club is located.

### Article 44: Injury Grievance

**Section 1. Definition:** An "Injury Grievance" is a claim or complaint that, at the time a player's NFL Player Contract or Practice Squad Player Contract was terminated by a Club, the player was physically unable to perform the services

required of him by that contract because of an injury incurred in the performance under that contract….

**Section 2. Filing:** Any player and/or the NFLPA must present an Injury Grievance in writing to a Club, with a copy to the Management Council, within twenty-five (25) days from the date it became known or should have become known to the player that his contract had been terminated. The grievance will set forth the approximate date of the alleged injury and its general nature.[6]

### Article 50:    Committees

**Section 1.    Joint Committee:**

(a)  A Joint Committee on Player Safety and Welfare (hereinafter the "Joint Committee") will be established for the purpose of discussing the player safety and welfare aspects of playing equipment, playing surfaces, stadium facilities, playing rules, player-coach relationships, and any other relevant subjects. The Joint Committee will consist of six members: three Club representatives (plus advisors) and three NFLPA representatives (plus advisors). The Joint Committee will not have the power to commit or bind either the NFLPA or the Management Council on any issue. The Joint Committee may discuss and examine any subject related to player safety and welfare it desires, and any member of the Committee may present for discussion any such subject. Any Committee recommendation will be made only to the NFLPA, the Management Council, the Commissioner, or any appropriate committee of the NFL; such recommendation will be given serious and thorough consideration.

(ECF No. 1-2, PP. 188-89, 193, 210, 230). The Rams further assert the following section of the NFL Player Contract requires interpretation in order to resolve Plaintiff's claims:

9.    INJURY. Unless this contract specifically provides otherwise, if Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary, and will continue to receive his yearly salary for so long, during the season of injury only and for no subsequent period covered by this contract, as Player is physically unable to perform the services required of him by this contract because of such injury. If Player's injury in the performance of his services under this contract results in his death, the unpaid balance of his yearly salary for the

---

6 While the Rams seemingly point to Article 45 as implicated by Plaintiff's claims, the Court finds no indication in the record that Plaintiff failed the preseason physical examination given by his Club physician for the season following the season of injury because of such injury, a necessary prerequisite to the application of Article 45. (*See* ECF No. 1-2, P. 217).

> season of injury will be paid to his stated beneficiary, or in the absence of a stated beneficiary, to his estate.

(*Id.*, P. 277). The Rams maintain Plaintiff's claims against them, particularly for "lost wages, medical expenses, [and] loss of future earnings" require interpretation of these provisions, "both in determining the Rams' relative duty to monitor and warn [Plaintiff] about the 'playing surface' and 'stadium facility,' and its obligation, if any, to provide [Plaintiff] with medical care and compensation as a result of the injury he sustained while a member of the opposing team." (Rams' Opposition to Plaintiff's Motion to Remand, P. 7).

Upon consideration, the Court finds an interpretation of the above provisions is not essential to Plaintiff's case. For example, with respect to Article 39, Sections 1 and 3, the Court finds that neither the cost of medical services rendered by Club physicians (to be paid for by the Club, i.e., the 49ers), nor the provision of preventive, medical, surgical, or rehabilitative care for players by clubs is at issue in Plaintiff's suit. In other words, Plaintiff does not claim he failed to receive contractually mandated care; instead, he claims he was not warned of a dangerous condition existing at the stadium. The same holds true for any responsibilities imposed on the Accountability and Care Committee; in other words, the Court finds the Rams' duty to warn exists independently of the Committee's responsibility to develop a standardized preseason and postseason physical examination, and to develop an educational protocol to inform players of the primary risks associated with playing professional football.

With respect to Articles 41 and 44 of the CBA, and section 9 of the NFL Player Contract, the Court finds those provisions speak to the player's ability to perform under his contract, or otherwise to recover from, his own NFL team. Plaintiff is not a player with the Rams, and so the provisions do not apply.

The strongest argument put forth by the Rams involves Article 50, Section 1. As noted above, that provision requires the establishment of a Joint Committee for the purpose of discussing, among other things, the player safety and welfare aspects of playing equipment, playing surfaces, and stadium facilities. The Joint Committee does not have the power to commit or bind any of the signatories to the CBA, however, nor does the CBA establish a contractually agreed upon standard of care applicable to Plaintiff's claims. Upon consideration the Court agrees with Judge Perry's analysis of the provision set forth in *Green*, as follows:

> Mere reference to part of a CBA is insufficient for preemption; the relevant inquiry is whether the resolution of the claim depends upon the meaning of the CBA. *Williams*, 582 F.3d at 876 (citation omitted). The [Rams do] not show how the interpretation of [this] section[] is essential to plaintiff['s] case.

*Green*, 21 F.Supp.3d at 1028. Thus, the Court agrees with Plaintiff that the duties at issue here arise out of the common law duty of care sports teams owe to their invitees, and not out of any particular terms in the CBA. *Id*. A substantial dependence upon an analysis of the CBA thus cannot serve as a basis for removal, and so Plaintiff's Motion to Remand must be granted.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (ECF No. 21) is **GRANTED**, and this case is **REMANDED** to the Circuit Court of St. Louis City, State of Missouri. An appropriate Order of Remand will accompany this Memorandum and Order.

Dated this ___3rd___ Day of June, 2016.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE